ACCEPTED
01-14-00744-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/19/2015 4:52:14 PM
CHRISTOPHER PRINE
CLERK

Nos. 01-14-00744-CR and 01-14-00745-CR

In the
Court of Appeals for the First District of Texas
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/19/2015 4:52:14 PM
CHRISTOPHER A. PRINE
Clerk

Cause Nos. 1326112 and 1383738
In the 248th District Court
Of Harris County, Texas

ARTAVIOUS DEON HOLLINS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

APPELLANT'S SUPPLEMENTAL BRIEF

Casey Garrett
4010 Bluebonnet, Suite 204
Houston, Texas 77025
(713) 228-3800
Texas Bar No. 00787197

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Artavious Deon Hollins

Counsel for Appellant at Trial:
> Mr. T. B. Todd Dupont, II
> Texas State Bar No. 24004289
> 3700 North Main Street
> Houston, Texas 77009
> 713-682-1800
> Mr. Mike Driver
> Texas Bar No. 24069634
> 402 Main, 4th Floor
> Houston, Texas 77002
> 713-417-4809

Counsel for Appellant on Appeal:
> Casey Garrett
> 4010 Bluebonnet, Suite 204
> Houston, Texas 77025
> Texas Bar No. 00787197
> 713-228-3800

Counsel for the State at Trial:
> John Wakefield
> Assistant District Attorney
> Texas Bar No. 24054125
> 1201 Franklin Street, Suite 600
> Houston, Texas 77002
> 713-755-6881

Counsel for the State on Appeal:
> Harris County District Attorney's Office
> Appellate Division
> 1201 Franklin, Suite 600
> Houston, Texas 77002
> (713) 755-5800

Trial Judge: The Honorable Katherine Cabaniss

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................................... 2

TABLE OF CONTENTS .......................................................................................... 3

INDEX OF AUTHORITIES ..................................................................................... 4

STATEMENT OF THE CASE ................................................................................... 5

SUPPLEMENTAL ISSUE PRESENTED .................................................................. 6

> The evidence presented at trial was legally insufficient to support a conviction for tampering with the evidence.

SUMMARY OF THE ARGUMENT ............................................................................ 7

STATEMENT OF FACTS ......................................................................................... 7

APPELLANT'S FIRST SUPPLEMENTAL POINT OF ERROR ................................. 9

PRAYER ................................................................................................................. 13

CERTIFICATE OF SERVICE ................................................................................. 14

## INDEX OF AUTHORITIES

**Cases**

***Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)..............................10

***Jackson v. Virginia***, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)...............................................................................................................10

***Wise v. State***, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ................................ 10

**Statutes**

Tex. Penal Code Ann. sec. 37.09(a). (West 2014).............................................................10

## STATEMENT OF THE CASE

Mr. Artavious Hollins was charged by indictment with the felony offense of murder (R.R.3 – 14). He was also indicted with the felony offense of tampering with evidence (R.R.3 – 14). Mr. Hollins pled not guilty to both of the charges and the cases were tried together before a jury (R.R.3 – 14). The jury found Mr. Hollins guilty of murder and guilty of tampering with evidence (C.R. 308). The jury assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division, in the murder case. The jury assessed punishment at confinement for twenty-five years in the Texas Department of Criminal Justice, Institutional Division, in the tampering case. Mr. Hollins filed timely notice of appeal.

## SUPPLEMENTAL ISSUE PRESENTED

The evidence presented at trial was legally insufficient to support a conviction for tampering with the evidence.

SUMMARY OF THE ARGUMENT

The State presented insufficient evidence that Mr. Hollins tampered with any evidence or disposed of any weapons.

STATEMENT OF FACTS

Mr. Hollins and his girlfriend moved into an apartment complex on West 34th Street known as Casa Nube, and within a matter of days, one of the women living in the complex started arguing with him (R.R.4 – 196-204). At first, the woman and Mr. Hollins merely exchanged some words back and forth, and Mr. Hollins tried to avoid any further escalation by going into his apartment and closing the door (R.R.3 – 140-143, 4 – 22-25, 204-215). At some point during this confrontation between Shae and Mr. Hollins, other residents got involved, including Tranea Jones and Andre Lewis. Andre Lewis appeared on the scene with a gun in his pocket, which he displayed to Mr. Hollins in a manner that was not immediately threatening but let Mr. Hollins know he was armed (R.R.4 – 27-30).

The woman who began the argument, however, known to her friends as Shae, was not satisfied. She called a man she knew to come to Casa Nube and confront Mr. Hollins. She referred to this man as "D." Shae and D yelled at Mr. Hollins through the door of his apartment (R.R.3 – 140-144, R.R.4 – 33-45). They threw rocks, boards, and perhaps something like a log at the doors and windows of

Mr. Hollins' apartment. They were yelling and kicking his front door. Both Shae and D hoped to get Mr. Hollins outside so D could fight Mr. Hollins. Mr. Hollins stayed in his apartment and avoided any further conflict or interaction with D or Shae (R.R.3 – 140-150, R.R.4 – 33-45).

Approximately a week later, Shae started harassing Mr. Hollins again. She was bringing up the fight from the week before with other residents in the apartment complex (R.R.3 – 152-155). Shae spoke to Derrick Williams about what had happened between her and Mr. Hollins, but did not explain that she and D had already "taken care of it" by destroying Mr. Hollins' property and throwing bricks, boards, rocks and logs into his apartment. (R.R.3 – 155).

Derrick Williams became incensed by what Shae told him about Mr. Hollins and started across a small courtyard toward Mr. Hollins' apartment to fight him or confront him in some manner. Tranea Jones was watching the courtyard from her upstairs balcony and informed her roommate and partner, Andre Lewis, that Derrick Williams and Mr. Hollins were about to fight (R.R.3 – 155-160). Andre Lewis put on his shoes and ran downstairs. Derrick Williams and Andre Lewis were making comments and being aggressive toward Mr. Hollins, and at one point Derrick Williams told Mr. Hollins he was going to "whoop his behind." (R.R.3 – 152, 155-161). Mr. Hollins testified at trial that Derrick Williams and Andre Lewis told him he had to leave the apartment complex that night, and that both he and his wife were afraid to leave their belongings unattended because of the aggression toward him by the other residents.

Derrick Williams and Andre Lewis advanced toward Mr. Hollins' apartments. The witnesses told conflicting stories about how, exactly, it happened. Mr. Hollins testified he was in the bathroom when Derrick Williams and Andre Lewis came into his apartment unannounced and without warning. Tranea Jones testified that Mr. Hollins "invited" them into his apartment, but she clarified that he said it in a defensive way, telling them to "come on, then, come on in," and his tone was intended to say, "if you come in, basically I'm going to use that as self-defense," (R.R.3 – 159), indicating that Mr. Hollins felt threatened and was trying to retreat into his own home. Regardless of how it happened, all the witnesses agree that Derrick Williams went into Mr. Hollins' apartment. Andre Lewis alternately claimed that he wasn't in the apartment or that he was; and he testified at trial that he saw Mr. Hollins pull a gun out of his back waistband. Mr. Hollins testified that Derrick Williams was carrying the gun. All the witnesses agreed that Mr. Hollins and Derrick Williams tussled over a gun and the gun "went off" and no one thought Mr. Hollins intended to shoot Derrick Williams.

## APPELLANT'S FIRST SUPPLEMENTAL POINT OF ERROR

The evidence presented at trial was legally insufficient to support a conviction for tampering with the evidence.

In determining whether evidence is sufficient, a reviewing court views all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense

beyond a reasonable doubt. ***Wise v. State***, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012), citing ***Jackson v. Virginia***, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); ***Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. ***Wise v. State***, 364 S.W.3d at 903 (quoting ***Jackson***, 443 U.S. at 326, 99 S.Ct. at 2788-89). The fact finder determines the weight and credibility of the evidence. ***Id***.

Ordinarily, to sustain a conviction for murder the evidence must demonstrate that the person (1) knowing that an investigation or official proceeding is pending or in progress (2) alters, destroys or conceals any thing with intent to impair its availability as evidence. Tex. Penal Code Ann. sec. 37.09(a). (West 2014). A person acts "intentionally" or with intent with respect to the nature of his conduct or to a result of his conduct when it is "his conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. sec. 6.03(a); ***Wise***, 364 S.W.3d at 903. A person acts knowingly or with knowledge of the nature of his conduct or circumstances "when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. sec. 6.03(b).

Officer Christopher Castellani testified he was in pursuit of a man wearing a white shirt and a black hat (R.R.3 – 48). He said another officer found a white shirt and a black hat in a different location (R.R.3 – 48). He said later that day a dog found a firearm in the bushes not far from where the shirt and hat were found

(R.R.3 – 54). The dog found a pink Palmer frame pistol with a black slide (R.R.3 – 71). The distance between the pistol and the clothing was a matter of seconds on foot (R.R.3 – 71). A tank top style t-shirt was found at the scene (R.R.3 – 94). All the items were in the vicinity and very close to the apartment complex where the shooting took place (R.R.3 – 101).

On the day of the shooting, all the witnesses' agree that Mr. Hollins did not start or cause any arguments and that Shae, Williams and Lewis were being aggressive toward Mr. Hollins. Mr. Lewis testified that every time Mr. Hollins would begin to come out toward the courtyard and the other residents began escalating the fight or walking toward him, he would immediately retreat back into his home. Tranea Jones testified that Derrick Williams threatened to "whoop his behind," and Mr. Hollins continued to retreat until eventually he began saying things like, "well, come on, come on then," and eventually said, "come into my house." Tranea Jones referred to this statement as an "invitation," but her testimony made clear that she understood it to be in the nature of a dare, more of a way to call the bluff of Derrick Williams and Andre Lewis by daring them to follow Mr. Hollins into his own home. In fact, Tranea got Andre Lewis involved because she could tell that Derrick Williams was pursuing the conflict and heading toward Mr. Hollins' apartment.

All the witnesses testified that there was a struggle for a gun inside Mr. Hollins' apartment. Tranea Jones testified, "I was already around there because when Artavious realized that he had shot Derrick – because I don't think

11

Artavious knew he shot Derrick until he seen Derrick when Derrick said, "it didn't have to go like this." (R.R.3 – 167). Mr. Hollins also testified he didn't know if anyone was hurt when he ran away from the scene. He knew the gun had gone off, and he knew Derrick Williams had fallen somewhere outside of his apartment, but he was not aware that Derrick Williams had been shot.

Despite the inconsistencies in testimony, the witnesses at trial made several things clear: 1) Mr. Hollins was not the aggressor in any of the incidents at Casa Nube Apartments; 2) Mr. Hollins repeatedly declined to fight with the neighbors who were trying to instigate a conflict and instead retreated into his home; 3) Derrick Williams and Andre Lewis went into his home in the midst of a yelling match when at least one other resident believed a fight was about to start; and 4) Mr. Hollins did not intend to shoot or even know he'd shot Derrick Williams after the tussle in his apartment.

The investigating officers found all of the evidence in locations very close to where Mr. Hollins had been confronted by a group of angry neighbors. The evidence merely showed that he discarded the evidence as he fled the scene, not that he concealed or altered or otherwise attempted to prevent the investigation from proceeding. To the contrary, investigators found a tank top next to the body of Derrick Williams. The pistol in this case was found steps from where Mr. Hollins' other clothing was found. The State was unable to demonstrate that Mr. Hollins concealed any evidence and unable to demonstrate that he intended to conceal any evidence. The evidence at trial was legally insufficient to support a

conviction for tampering and the case should be reversed and Mr. Hollins should be acquitted.

<div align="center">PRAYER</div>

Appellant respectfully prays this Honorable Court to reverse the conviction and acquit Mr. Hollins.

Respectfully submitted,

/s/ Casey Garrett
Casey Garrett
4010 Bluebonnet, Suite 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been provided

to the District Attorney's Office electronically.

<div style="margin-left:50%">

   /s/ Casey Garrett   

Casey Garrett
4010 Bluebonnet, Suite 204
Houston, Texas  77025
(713) 228-3800
Texas Bar No. 00787197

</div>